EDGAR E. RING, Land Agent,

Petitioner for Location of Public Lots in Elliotsville.

Piscataquis. Opinion December 18, 1908.

*Reserved Lands. Public Lots. State Land Agent. State Deeds. Burden of Proof. Evidence. Historical Works. Articles of Separation, section 1, paragraph 7. Resolves (Mass.) 1788, March 26 ; 1810, Feb. 10 ; 1813, Feb. 27 ; 1813, March 2 ; 1814, Jan. 25 ; 1829, Oct. 28. Statutes (Mass.) 1784, July 9 ; 1794, May 1. Private & Special Laws, 1830, chapter 176. Statute 1821, chapter 41 ; 1824, chapter 280, section 8 ; 1835, chapter 170 ; 1850, chapter 196, section 3. Revised Statutes, 1841, chapter 122, section 1 ; 1903, chapter 7, section 20.*

The Land Agent in his official capacity, under the provisions of Revised Statutes, chapter 7, section 20, is charged with the duty of instituting proceedings to locate lots reserved in grants of lands made by the State which have not been located or which, if located, have not been lawfully located, for the purposes expressed in the grants.

Where land has been granted by the State with a reservation of public lots in the deed thereof, to be thereafterwards located, such lots must be located within the limits of the land specifically granted.

Although a tract of land has been granted by the State without any reservation of public lots in the deed thereof, yet the grantee takes such deed subject to the reservation of such lots and the right to locate the same when the statute in force at the time the grant was made, required such reservation to be made.

Where different portions of a tract of land known as the "State Tract" were conveyed by the State at different times to different grantees without any reservation of public lots therein, and the statute in force at the time such grants were made required such reservation to be made, *Held:* That the location of the public lots should be made in the portion last conveyed by the State.

A grant of land was made by the Commonwealth of Massachusetts containing the following provision : " Conditioned, however, that said grantees, their successors and assigns, shall lay out and reserve three lots of fifty-six acres each for the following purposes, viz : 1 lot for the use of the ministry, 1 lot for the first settled minister his heirs and assigns, and 1 lot for the use of the schools within the township, said lots to average in situation and quality with the lands in said tract." The evidence seemed to show that these lots had been located by the proprietors within the water area of Onaway Lake. *Held:* That even if the action of the proprietors was bona fide, the conditions of the grant were not performed by laying out and allotting water areas in Onaway Lake, which as public waters could not pass by the grant to them, instead of land of average quality with residue of lands therein.

Where the Land Agent by petition instituted proceedings for the appointment of a committee to locate public lots in Elliottsville Plantation, alleging that the reserved lots described in the petition had not been located in severalty for the purposes expressed in the grants, *Held:* (1) That though the allegation was negative in form yet it was in substance the affirmation of his authority and the burden rested upon him to prove this fact. (2) That the reservations and conditions subsequent in the grants of land comprising the plantation showed prima facie the petitioner's authority to institute the proceedings, and the duty of producing evidence to rebut it devolved upon the land owners.

Where there was no primary or record evidence to show that public lots had been located in the "Vaughan Tract," so called, in Elliottsville Plantation, *Held:* That certain words and recitals in deeds of land within the territorial limits of said tract, certain marks on an old plan known as the "Bodfish Plan," certain statements in Loring's History of Piscataquis County, and certain statements in the School Reports, were admissible as secondary evidence that such lots had been located in said tract.

Elliottsville Plantation is composed of a certain "mile strip" of land granted by Massachusetts to the Massachusetts Medical Society, containing 3,000 acres, the Vaughan Tract, so called, containing 11,520 acres, the Saco Free Bridge Fund Grant, containing 4,044 acres and the State Tract, so called, containing 2,626 acres and which includes the Leavitt Grant, so called, of

1,250 acres. On the petition of the Land Agent for the appointment of a committee to locate public lots in said plantation, *Held:* That a committee should be appointed to locate public lots as follows, viz : in the one mile strip of the Massachusetts Medical Society, 3,000 acres, one lot of 125 acres, in the Saco Free Bridge Fund Grant, 4, 044 acres, three lots of 56 acres each, and in the Leavitt Grant, 1,250 acres, being part of the State Tract, 2,626 acres, last conveyed, a lot or lots containing in the aggregate 113.9 acres, of average quality with the residue of lands in each tract, and to designate the use for which each lot is so reserved and located.

On report. Petition granted. Remanded for proceedings at nisi prius according to opinion.

Petition by Edgar E. Ring, Land Agent of the State of Maine, for the appointment of a committee to locate public lots in the Plantation of Elliottsville, Piscataquis County.

The following named owners of lands in Elliottsville appeared and filed an answer to the petition : Cilla B. Hale, Ship Pond Company, J. G. Dunning, C. W. Coffin, Thomas Gilbert, A. S. Garland, Samuel Sterns, Ezra L. Sterns, S. & J. Adams, F. H. Drummond, William Engel, J. F. Sprague, Enos Sawyer, Jr., Sterns Lumber Company, R. A. Young, and R. A. Buxton. The answer, among other things, denied that the lands reserved for the public uses in Elliottsville had not been lawfully located in severalty, and also asserted that the petitioner as Land Agent had no authority under the laws of the State to maintain the petition.

A hearing was had on the petition and at the conclusion of the evidence the case was reported to the Law Court for determination, with the stipulation that "if the petition is sustained, the Law Court to appoint commissioners."

The case appears in the opinion.

*J. S. Williams, and Warren C. Philbrook,* Assistant Attorney General, for petitioner.

*Hudson & Hudson,* for Ship Pond Co.,
                        Sterns Lumber Co.,
                        S. & J. Adams,
                        F. H. Drummond,
                        and William Engel.

*J. F. Sprague,* for himself, Enos Sawyer and Sterns Lumber Co.
*Charles H. Bartlett,* for Cilla B. Hale.

SITTING:  EMERY, C. J., WHITEHOUSE, PEABODY, SPEAR, CORNISH, JJ.

PEABODY, J.   This is a petition presented by the Land Agent for the appointment of a committee to locate public lots in the Plantation of Elliottsville in Piscataquis County.

Under a public act of the Commonwealth of Massachusetts May 1st, 1794, Samuel Weston was authorized and directed to survey three ranges of townships between Penobscot River and the Million Acre Purchase north of Waldo Patent, which subsequently became a part of the State of Maine.

The survey located Ranges Seven, Eight and Nine and divided them into townships six miles square. The plantation known as Elliottsville was Township Eight, Range Nine, according to Weston's survey. By an act of the General Court of Massachusetts, approved July 9, 1784, the Committee for the sale of Eastern Lands were directed in the conveyance of each township to appropriate two hundred acres for the use of the ministry, two hundred acres for the first settled minister, two hundred acres for the use of the Grammar School, and two hundred acres for the future disposition of the General Court, and by an act, approved March 26th, 1788, the previous act was modified so as to require thereafter in the conveyance of every township of six miles square a reservation of four lots of three hundred and twenty acres each, one for the first settled minister, one for the use of the ministry, one for the use of schools and one for the future appropriation of the General Court.

This act continued in force until the separation of Maine from Massachusetts, when its provisions in regard to school and ministerial lots were incorporated in paragraph seven, section one of the Articles of Separation adopted June 19th, 1819.

The first conveyance of lands within Township Eight, Range Nine, was the grant by the Commonwealth of Massachusetts to the Trustees of the Massachusetts Medical Society dated March 2nd, 1813, by virtue of a resolve passed February 10th, 1810, and by a resolve passed February 27th, 1813. The appropriation was of one township of land to contain six miles square and in order to obtain

the full township of six miles square the conveyance was of all of township Nine, Range Nine, north of Waldo Patent, except three thousand acres in the north west corner which had been conveyed to William C. Whitney, and to make up for the three thousand acres conveyed to Whitney the grant included a strip of land on the west side of Township Eight, Range Nine, one mile in width upon the north end and two hundred and eighty-six rods in width upon the south end.

In this grant it was provided that the Trustees of the Massachusetts Medical Society should lay out in the township three lots of three hundred and twenty acres each for the following uses, namely, one lot for the use of the ministry, one lot for the first settled minister his heirs and assigns, and one lot for the use of the schools.

By chapter 176 of the Private Laws of 1830, Township Nine, Range Nine, was incorporated as the Town of Wilson. The public lots within this town were located by proceedings authorized by the Act of March 15th, 1821, chapter 41, upon a petition filed by the officers of that town. These proceedings could legally embrace only the lots which had been reserved in the part of the tract above mentioned granted by the Commonwealth to the Massachusetts Medical Society which was within the Wilson Township, so the territory included in the tract on the west side of Township Eight, Range Nine, being in the Plantation of Elliottsville, is involved in the pending petition.

The second conveyance of lands within Township Eight, Range Nine, was a grant by the Commonwealth of Massachusetts to the heirs of William Vaughan dated January 25th, 1814, of one-half township of land containing eleven thousand five hundred twenty acres, which grant contained the following provision :

"Conditioned, however, that said grantees their heirs and assigns shall lay out in said tracts four lots of one hundred sixty acres each for the following uses, 1 lot for the first settled minister ; 1 lot for the use of the ministry ; 1 lot for the use of the schools ; and one lot for the future appropriation of the General Court, said lots to average in situation and quality with the other land in said tract."

The third conveyance of lands within Township Eight, Range

Nine, was the grant by the Commonwealth of Massachusetts to the Trustees of the Saco Free Bridge Fund dated October 28th, 1829, of a tract of land surveyed by Tristiam Johnson containing four thousand forty-four acres, in which was the following provision :

"Conditioned, however, that said grantees, their successors and assigns, shall lay out and reserve three lots of fifty-six acres each for the following purposes, viz ; 1 lot for the use of the ministry, 1 lot for the first settled minister his heirs and assigns, and 1 lot for the use of the schools within the township, said lots to average in situation and quality with the lands in said tract."

Township Eight, Range Nine, was thus composed of the tract of land comprising a part of the grant of the Commonwealth to the Massachusetts Medical Society, situated on the west side of the township, the tract of land conveyed to heirs of William Vaughan, the tract of land conveyed to the Saco Free Bridge Fund, and a tract of land lying directly south of the Saco Free Bridge Grant of sufficient width to make the township contain six square miles or twenty-three thousand forty acres, known as the State Tract, which was acquired by the State of Maine from the Commonwealth of Massachusetts under the Separation Act. The State Tract was surveyed by Caleb Leavitt in 1830 and according to his plan contained two thousand six hundred and twenty-six acres. It is apparently the portion of the division and allotment of lands between Maine and Massachusetts made on the 28th of December 1822, described in the first Division as follows : "Also that part of lot number eight in said ninth range which had not been conveyed, containing four thousand four hundred and seventy-six acres," but the actual survey made subsequent to this division we may assume is more correct as to the number of acres in the tract though leaving a deficiency in the acreage of the township of one thousand eight hundred and fifty acres. This may have resulted from the exclusion from the Leavitt survey of the part of the State Tract covered by great ponds within its boundaries.

All the lands embraced in this township were granted while the resolve of 1788 was the law governing the reservation of lands for public uses, except the State Tract. The law providing for the

reservation of one thousand acres of land in every township suitable for settlement was enacted by chapter 280, section 8, of the Public Laws of Maine 1824, and could not apply to prior grants nor to those previously provided for because controlled by the language of paragraph seven of the Articles of Separation, which provides, "All grants of land, franchises, immunities, corporate or other rights, and all contracts for, or grants of land not yet located, which have been made or may be made by the said Commonwealth, before the separation of said District shall take place, having or to have effect within the said District, shall continue in full force, after the said District shall become a separate state;" but it did apply to the State Tract.

It therefore appears that of this township, the mile strip on the west side assumed to contain three thousand acres which was part of the grant to the Massachusetts Medical Society, the tract of eleven thousand five hundred and twenty acres granted to the Heirs of William Vaughan, and the tract of four thousand forty-four acres granted to the Saco Free Bridge Fund, were subject to the resolve of March 26th, 1788, providing for a reservation in the conveyance of every township of six miles square of four lots of three hundred and twenty acres each. These lots being reserved in the deeds must be located within the limits of the land specifically granted.

The State Tract of two thousand six hundred and twenty-six acres would be subject under the requirement of chapter 280, section 8, of the Public Laws of 1824, to a reservation of $\frac{2626}{23040}$ of one thousand acres or one hundred thirteen and nine-tenths acres, "to be appropriated to such public uses for the exclusive benefit of such town as the legislature may hereafter direct."

By an act approved March 15th, 1821, chapter 41, the Circuit Court of Common Pleas was authorized on application of the assessors of a town wherever in the grant thereof there were lots reserved for the use of the township and for public uses and not located by the grantees, to cause them to be located; and by an act approved March 13, 1835, chapter 170, the assessors of organized plantations

were authorized to obtain in like manner the location of lots received within them for public lots.

In Revised Statutes of 1841, chapter 122, section 1, the District Court in the county in which a plantation was situated, on the application of the assessors were authorized to appoint a committee to locate in separate lots the proportions reserved for the use of such township or for public uses when not located in severalty by the grantee.

By the Public Laws of 1850. chapter 196, section 3, the duty of instituting proceedings for the location of lots reserved for public uses devolved upon the Land Agent and the provision relating to the location of reserved lots was incorporated in the subsequent revisions of the statutes including the Revised Statutes of 1903, and is now chapter 7, section 20, which is as follows:

"Sec. 20. When in the grant of townships or parts thereof, certain portions of them are reserved for such townships, or for public uses, and they have not been lawfully located in severalty by the grantee for the purposes expressed in the grant, the supreme judicial court in the county where the land lies on application of the land agent, may appoint three disinterested persons, and issue to them a warrant, under the seal of the court, requiring them, as soon as may be, to locate in separate lots, the portions reserved for such purposes, and to designate the use for which each lot is so reserved and located, such lots to be of average quality with the residue of lands therein."

The petitioner in his official capacity is therefore charged with the duty of instituting proceedings to locate lots reserved in grants of lands embracing the Plantation of Elliottsville and not lawfully located in severalty by the grantees or by proceedings invoked by the assessors of the plantation, or of the town during its corporate existence from February, 1835 to May 25th, 1858. In his petition he alleges that the reserved lots in the land therein described have not been located in severalty for the purposes expressed in the grants. This allegation is denied by the defendants in their answer. The petition can be granted only in case a legal location has not been made and the burden rests upon the petitioner to prove this

fact.   Although negative in form it is in substance the affirmation of the petitioner's statutory authority to apply for the appointment of a committee for the location of the lots in question.   1 Green-leaf on Evidence, sections 74 and 78, 4 Wigmore on Evidence, 2486.

The reservations and conditions subsequent in the grants of land comprising the plantation introduced in evidence by the Land Agent show prima facie his authority to institute the proceeding, and thereupon the duty of producing competent evidence to rebut it devolves upon the defendant.   16 Cyc. 932.

Primary evidence would be sought in the records of the Registry of Deeds in the county in which the land lies, in the records of the plantation and town of Elliottsville and of the courts having juris-diction.   If the allotment has been made by any legal procedure, except of lots reserved in the tract granted to the Saco Free Bridge Fund no such record of evidence has been discovered.

Secondary evidence is offered by the respondents of certain words and recitals in deeds of land within the territorial limits of the Vaughan tract which imply an allotment, also marks on an old plan of Elliottsville known as the Bodfish Plan, the statements in Loring's History of Piscataquis County, and School Reports are introduced which are consistent with the claim of the defendants that the con-ditions in this grant have been performed in reference to that part of the plantation.   Objection to the admission of the Bodfish Plan as evidence is made by the petitioner because not clearly shown to have been in existence thirty years and because it has upon it marks not originally a part of the plan, but we think it is within the rule admitting ancient documents as evidence.   Objection is also made to the admission of Loring's History, but there is no indication that the writer had any interest to incorporate in his history any statements inconsistent with the original sources of the information upon which they are founded, and under the circumstances we think it competent evidence upon a question of this nature.   *State* v. *Wagner*, 61 Maine, 178.

But there appears to be no evidence of an allotment of reserved land within the limits of the one mile strip of three thousand acres,

or of the State Tract of two thousand six hundred and twenty-six acres. The only clearly proven action in locating any of the land reserved is that of the Trustees of the Saco Free Bridge Fund; but this has the appearance of being a pseudo allotment and should be treated as void. Even if the action of the proprietors was bona fide the conditions of the grant were not performed by laying out and allotting water areas in Onaway Lake which as public waters could not pass by the grant to them, instead of land of average quality with the residue of lands therein.

It is conceded by the petitioner that the deeds offered in evidence by him show the conveyance of the entire State Tract without the reservation of lots which the statute of 1824 required; but he contends that the grantees took the deeds subject to public rights and the existing laws which they were presumed to know. The decision in *Blake* v. *Bangor Savings Bank*, 76 Maine, 377, upon which the land owners rely, holds that the burden of the reservation of public lots passed to the portion last conveyed by the State. The last conveyance by the State of land in this tract was one thousand two hundred and fifty acres to Dudley F. Leavitt, September 1, 1866, and out of this portion the location of the public lots must be made.

Our conclusion is that a committee should be appointed to locate public lots as follows, viz: in the one mile strip of the Massachusetts Medical Society, 3,000 acres, one lot of 125 acres, in the Saco Free Bridge Fund Grant, 4,044 acres, three lots of 56 acres each, and in the Leavitt grant, 1,250 acres, being part of the State Tract, 2,626 acres, last conveyed, a lot or lots containing in the aggregate 113.9 acres, of average quality with the residue of lands in each tract, and to designate the use for which each lot is so reserved and located.

*Petition granted.*
*Proceedings at nisi prius according*
*to this opinion.*